WILL OF COLMAN: COLMAN and others, Appellants, vs. FIRST NATIONAL BANK AT ORLANDO, Executor, and others, Respondents.

*May 26—July 1, 1948.*

For the appellants there was a brief by *Lines, Spooner & Quarles* of Milwaukee, attorneys, and *Joseph H. Colman of* Minneapolis, Minnesota, of counsel, and oral argument by *Mr. Colman* and *Mr. James T. Guy* of Milwaukee.

For the respondent First National Bank at Orlando, Florida, there was a brief by *Miller, Mack & Fairchild,* and *J. Gilbert Hardgrove,* all of Milwaukee, attorneys, and *Maguire, Voorhis & Wells* of Orlando, Florida, of counsel, and oral argument by *Mr. Hardgrove.*

*Douglass Van Dyke* of Milwaukee, for the respondent Joseph Fairbanks.

For the respondent La Crosse Trust Company there was a brief by *Johns, Roraff & Coleman* of La Crosse, and oral argument by *Leonard F. Roraff.*

*C. L. Baldwin* of La Crosse, guardian *ad litem,* for Harry Lane Colman, Charlotte Thompson, and Ann Jackson.

*T. H. Skemp* of La Crosse, guardian, for Peter Colman Clark.

FRITZ, J.    The following findings of fact by the trial court are undisputed.    Lucius C. Colman (hereinafter called the "testator") was a resident of La Crosse county, and died there December 22, 1925.    His will, executed on March 7, 1906, was admitted to probate there on February 3, 1926.    The will provides that the testator's property be held in trust with directions for the payment of the income to the testator's widow, Genevra Colman, for life, and that,—

"After the death of my said wife, said trust is to be terminated and I give, devise and bequeath all my estate, both real and personal, in equal portions to my sister Julia L. Osborne and my brothers Harry L. Colman and Edward L. Colman, for their sole use and benefit.   And in case of the death of my said sister or either of my said brothers before the death of my said wife, the share that he or she would have taken shall be divided equally between his or her surviving children, by right of representation."

The testator's wife, Genevra Colman, survived him and presently is still alive at the age of eighty-nine years.    His brother Harry L. Colman and his sister Julia L. Osborne died

before the testator; and testator's brother Edward L. Colman died intestate January 3, 1926.

Testator's sister Julia L. Osborne was survived by three children, viz.:

## Group A

Laura O. Austin, who died January 8, 1941, without issue, left a will placing her property in trust, with Joseph Fairbanks as trustee;

Edna O. Follett, who died November 5, 1939, without issue, left a will devising half of her estate to her·sister Laura O. Austin, and half to her brother Rockwell C. Osborne;

Rockwell C. Osborne, who died April 5, 1946, left a will bequeathing his property in trust to his wife for life, with remainder over to fourteen persons who are children of the children of testator's brothers, Edward L. and Harry L. Colman.

Testator's brother Harry L. Colman was survived by three children, viz.:

## Group B

Charles E. Colman, who died testate May 13, 1939, left his property in trust for his widow and four children;

Charlotte C. Bigler, who is living and has one child, John C. Bigler;

Julia C. Smith, who died August 27, 1935, and is survived by two children.

Testator's brother Edward L. Colman, who survived the testator but died intestate January 3, 1926, was survived by his wife and four children, viz.:

## Group C

Ruth C. Clark, Anna Colman, Joseph H. Colman, and Helen C. Murphy, who are all living and have children, with the exception of Anna Colman.

After the hearing the county court concluded:

(1) That the petition requesting the construction was not premature, and that the present determination of the ultimate distribution of the corpus of the trust was necessary.

(2) That, subject to the trust estate left in favor of Genevra Colman, the entire principal or corpus of the estate of Lucius C. Colman was by his will devised to and vested in the following

named legatees at the times and in the proportions and estates following:

That one third of the remainder of the estate vested indefeasibly in the three children of Julia L. Osborne, at the time of the death of Lucius C. Colman, being a one-ninth part in Laura O. Austin, a one-ninth part in Edna O. Follett, and a one-ninth part in Rockwell C. Osborne;

That a one-third part of said remainder vested indefeasibly in the three children of Harry L. Colman at the time of the death of Lucius C. Colman, being a one-ninth part in Charles E. Colman, a one-ninth part in Charlotte C. Bigler, and a one-ninth part in Julia C. Smith;

That at the time of the death of Lucius C. Colman a one-third part of said remainder vested in Edward L. Colman, but by reason of his failure to survive the widow, Genevra Colman, such one-third portion was divested and thereupon became vested upon the death of said Edward L. Colman in his four surviving children, being: a one-twelfth portion in Ruth C. Clark, a one-twelfth portion in Anna Colman, a one-twelfth portion in Joseph H. Colman, and a one-twelfth portion in Helen C. Murphy.

That the court does not find it necessary to define the subsequent descents applicable to the resulting shares of any vested remaindermen above named, who are now deceased, such estates being subject to devise by will or laws of descent in appropriate domiciliary jurisdictions.

The determination of this case depends upon the proper interpretation of the above-quoted residuary clause in Lucius Colman's will which immediately follows the provision by which he gave, devised, and bequeathed all his property in trust with directions for the payment of the income thereof to his wife, Genevra Colman, for life. By the provisions in the first and dominant sentence in said residuary clause the testator provided the direct or primary gifts. And the provisions in the second sentence provide for distinct gifts over, which are secondary; and which became operative,—in the case of the brother and sister who predeceased the testator,—as of the date of death of the testator to substitute for such predeceased

brother and sister, his or her surviving children, by right of representation, as a new set of legatees and devisees (hereinafter called "legatees"). Under said first sentence, if it stood alone, equal portions of the remainder of the estate would vest at the time of the death of the testator in Edward L. Colman and in the issue of Julia L. Osborne, and the issue of Harry L. Colman; and the language "I give, devise and bequeath," as used in the residuary clause, is the appropriate language for an absolute gift of a one-third portion of said remainder; and speaks as of the time of the death of the testator, although the remainder cannot take effect in enjoyment until the termination of the trust upon the death of the widow. *Will of Reimers,* 242 Wis. 233, 7 N. W. (2d) 857; *Estate of Downs,* 243 Wis. 303, 9 N. W. (2d) 822; *Estate of Wadleigh,* 250 Wis. 284, 26 N. W. (2d) 667.

By the language in the second sentence of the residuary clause that,—

"And in case of the death of my said sister or either of my said brothers before the death of my said wife, the share that he or she would have taken shall be divided equally between his or her surviving children, by right of representation,"—

the said interests of the testator's brothers and sister were made subject to be divested on the condition subsequent that if prior to the death of testator's wife one of said legatees died leaving surviving children, such legatee's interest would be divided equally between his or her surviving children, by right of representation.

That that was the effect of substantially similar language was recognized in *Scott v. West,* 63 Wis. 529, 569, 24 N. W. 161, 25 N. W. 18, where there was quoted with approval the following language from *McArthur v. Scott,* 113 U. S. 340, 381, 5 Sup. Ct. 652, 28 L. Ed. 1015:

"The direction, that if any grandchild shall have died before the final division, leaving children, they shall take and receive *per stirpes* the share of the estate, both real and personal, which their parents would have been entitled to have and receive if

then living, was evidently intended merely to provide for children of a deceased grandchild, and not to define the nature, as vested or contingent, of the previous general gift to the grandchildren; and its only effect upon that gift is to divest the share of any grandchild deceased leaving issue, and to vest that share in such issue."

The general rule is that when a vested interest is divested by a condition subsequent, such interest immediately vests in the substitutionary legatees unless the will expressly provides otherwise. 69 C. J., Wills, p. 266, sec. 1280; p. 346, sec. 1349; p. 357, sec. 1368; *Rennolds v. Branch,* 182 Va. 678, 29 S. E. (2d) 847, 850, 851; *Boulden v. Dean,* 167 Md. 101, 173 Atl. 26; *Pyne v. Pyne* (D. C.), 154 Fed. (2d) 297, 304; *Simpkins v. Simpkins,* 131 N. J. Eq. 227, 24 Atl. (2d) 821. Consequently then, as under the will involved herein, the substitutionary legatees are children not of the testator nor of the life tenant, but surviving children of a third person, the class is determined and the bequest vests in such class on the death of their parent, or ancestor if taking *per stirpes.* 3 Page, Wills (lifetime ed.), p. 230, sec. 1055; 69 C. J., Wills, p. 266, sec. 1280, note 47; p. 347, sec. 1349. When the interest of the parent vests in the children as a class the interest of any child then living is not divested by the death of such child prior to the termination of the life estate. 3 Page, Wills (lifetime ed.), p. 249, sec. 1059, note 9; *Benner v. Mauer,* 133 Wis. 325, 336, 113 N. W. 663.

Moreover, there would be no lapsing of the remainders to Julia L. Osborne and Harry L. Colman herein in view of the provision in sec. 238.13, Stats. (formerly sec. 2289), which reads:

"When a devise or legacy shall be made to any child or other relation of the testator and the devisee or legatee shall die before the testator, leaving issue who shall survive the testator, such issue shall take the estate so given by the will in the same manner as the devisee or legatee would have done if he had survived the testator unless a different disposition shall be made or directed by the will."

This statute is to be liberally construed and all doubts must be resolved in favor of the operation thereof. The testator is presumed to have framed his will with the statute in mind, and that the statute would take effect in the absence of a provision of the will clearly applying to the death of a relative prior to testator's death and making a disposition of the lapsed legacy other than to the issue of such deceased relative. The statute in effect is a part of his will. Note, 92 A. L. R. 846, 849, 850. As stated in *Estate of Campbell,* 229 Wis. 610, 614, 282 N. W. 58,—

"The will did not make or direct any different disposition. If the testator wished to avoid the effect of sec. 238.13, Stats., he should have made another will. . . . Not having taken such action, the statute prevails."

This conclusion is clearly applicable herein because there is in the will no provision which can be deemed to make a disposition of any lapsed legacy which differs from the disposition made by sec. 238.13, Stats. It follows that there cannot be sustained appellants' contention that under the provision in the second sentence in relation to the gift over, in event of the death of a brother or sister prior to the death of the widow, the gift is to go to those of the issue of the deceased brothers or sister who survive the death of the widow. In support of that contention appellants claim that the word "children," as used in said second sentence, is to be construed as meaning "issue;" and the word "surviving" is related to the date of death of the widow, instead of the date of the death of the children's parent, who was the sister or brother of the testator; and that if only children of a deceased brother or sister are to take, the entire thought is fully expressed by the equal division of the share in question, without adding the phrase "by right of representation," and this additional phrase is entirely redundant and wholly without meaning unless "children" includes grandchildren and more remote descendants. In respect to these claims

it suffices to note that the words "shall be divided equally between his or her surviving children, by right of representation" do not relate to the primary gift to testator's sister and brothers. Nor do they relate to the three gifts over as a whole. They apply separately and only to each one of the secondary gifts over. If the testator intended to use the words "by right of representation" in the technical sense, the ancestor from whom the line of representation is to be traced is the deceased brother or sister. And it is evident that the meaning of the provision that the share is to be divided "between his or her surviving children, by right of representation" is the same as if the words used were "between his or her children surviving him or her." As to the brother and sister who predeceased the testator, the gift over under the will took effect at the death of the testator, the substituted legatees being determined in like manner with reference to the survival over their respective ancestors. The ancestor is not the testator. As to the brother Edward Colman, who survived the testator, the gift over took effect at the death of the primary legatee, and the substituted legatees or devisees are determined in like manner. There are three ancestors; there are three distinct gifts over; and there is no relation between the three in the application of the testamentary direction. Hence, there is nothing in the words "by right of representation" which can be considered to indicate that the words "surviving children" mean "children surviving at the death of the widow." Under the provisions in question, as the sister and brothers are named (*Will of Griffiths,* 172 Wis. 630, 179 N. W. 768; *Estate of Bloch,* 227 Wis. 468, 278 N. W. 875), and there are three separate gifts and not a single-class gift to all, and no words of survivorship as between the named beneficiaries, no class gift was created. Although it is evident under the provisions in the residuary clause that the testator did intend that a remainder vested in a sister or brother at his death would be subject to be divested in favor of that legatee's children, there is no provision that the testator

intended to postpone vesting once the title to the remainder became fixed in a niece or nephew. Thus, although provisions in the residuary clause disclose that the testator contemplated the possibility of changes between the time of the death of the testator and the death of his wife, and therefore provided that the remainder vesting in a sister or brother should be defeasible, he did not provide and presumably did not intend that the estate of any of the nieces or nephews should also be defeasible upon the death of any of them. The only gift over of the remainder which became vested in any one of the three primary beneficiaries is the gift over to the children of such primary beneficiary in the event of his or her death. It clearly was not the intention of the testator, as expressed in his will, to make a gift over to any other of the three primary beneficiaries or their respective children. Once the remainder vested in the children of any one of the three primary beneficiaries, it was no longer subject to be divested. The law favors a vested rather than a contingent estate; and an absolute rather than a defeasible estate; and a vesting at the earliest possible period. As is stated in *Byers v. Rumppe,* 251 Wis. 608, 613, 30 N. W. (2d) 192:

"Sound policy and practical convenience require that title shall be vested at the earliest period."

*By the Court.*—Judgment affirmed.

MARTIN, J., took no part.