WILL OF WALKER: CROW, Administrator, Appellant, v. MARSHALL & ILSLEY BANK, Trustee, and another, Respondents.*

*May 3—June 29, 1962.*

* Motion for rehearing denied, with $25 costs, on October 2, 1962, WILKIE, J., taking no part.

184

For the appellant there were briefs by *Affeldt & Lichtsinn,* and oral argument by *Eldred Dede,* all of Milwaukee.

For the respondents there was a brief and oral argument by *Ralph M. Hoyt* of Milwaukee, guardian *ad litem.*

CURRIE, J. The sole issue before us is whether the bequest of the trust corpus to the grandnephews and grandnieces is conditioned upon their survival until the date of distribution. This date has previously been determined to be the time when the youngest living member of the class arrives at the age of fifty years. In order to construe the final decree to resolve this issue, it is necessary to resort to the will itself. This is because the final decree in the estate assigned the residue of the personal estate in trust "in accordance with the terms and provisions of the trusts created by decedent's last will and testament as construed" by the prior judgment of November 3, 1949.

It is well established that all rules of construction yield to the cardinal rule that the language of a will should be so construed as to give effect to the intention of the testator, if that intention may be ascertained from the language of the will itself, considered in the light of the surrounding circumstances. *Will of Emmerick* (1954), 268 Wis. 186, 189, 67 N. W. (2d) 374. When testatrix made her will in 1924 there was every likelihood that, had she died shortly thereafter, the final date of distribution of the trust corpus would not have arrived for more than fifty years. This is because of the probability of further children being born to her two nephews. Even when she died in 1947 there was still the possibility that distribution might occur more than fifty years hence. However, the youngest living grandnephew and grandniece were then seventeen years old, and, thus, the probability was that final distribution would not take place for approximately thirty-three years. Another probability

existing at the time of testatrix's death was that one or more of the grandnephews and grandnieces might die prior to the distribution date. From these facts it is quite evident that testatrix intended a long-term trust, the specific beneficiaries of which were not then determinable.

Moreover, this conclusion as to testatrix's intent is fortified by the actual words used in her will. She directed that, "At the time the youngest great-nephew or niece is fifty years old the residue of my estate is to be divided among them all share and share alike." The pronoun "them" refers only to "great-nephews and nieces." This would seem to exclude a division among persons who are neither grandnephews nor grandnieces. Completely absent from this will is any provision for substitution of the issue, heirs, or estates of any deceased grandnephew or grandniece. Furthermore, the words "share and share alike" import a per capita and not a per stirpes distribution. *Will of Bray* (1951), 260 Wis. 9, 17, 49 N. W. (2d) 716. Therefore, to construe this provision so as to entitle the issue, heirs, or estate of a deceased grandnephew or grandniece to their decedent's share in the corpus would be inconsistent with the language of the will itself, and to entitle such parties, as individual persons or entities, to a share of the corpus equal to that of the surviving members of the class would appear to be contrary to the intention of the testatrix.

Furthermore, if the will were construed as not requiring survivorship until the date of distribution, then the next of kin or legatees of a deceased grandnephew or grandniece would receive a share of the trust estate. Thus, persons not of testatrix's bloodline, or even corporate institutions, might be the ultimate distributees under this construction. 5 American Law of Property, pp. 131, 132, sec. 21.3, states that, when faced with problems of construction to arrive at donative intent, courts invoke a preference for keeping prop-

erty among blood relatives. We quote from this text as follows (p. 132).

"In some cases this preference should work against a finding that an interest given to a blood relative is vested prior to the time set for enjoyment of the interest in possession because as a vested interest it may descend to the transferee's heirs, who may not be related by blood to the transferor, whereas if the interest is contingent on the survival of the initial transferee, his failure to meet the requirement of survival will normally cause the property to go back to the blood relatives of the transferor."

In *Will of Latimer* (1954), 266 Wis. 158, 173, 63 N. W. (2d) 65, this court gave expression to this same principle of favoring a construction which would insure the transmission of the trust estate to blood relatives. Application of that principle here would favor a construction that the bequest to the grandnephew and grandniece beneficiaries was conditioned upon their survival until the date of distribution.

There is another principle of construction which favors requiring the beneficiaries of the instant bequest to survive until the date of distribution. This principle is stated in 4 Page, Wills (lifetime ed.), p. 176, sec. 1421, as follows:

"If testator has made a gift to a class, and one of the class dies before testator, or even after testator, while the class is not yet determined there is no lapse or failure of any part of such gift; but, in the absence of statute, no interest under such gift passes to the heirs or next of kin of the deceased beneficiary. The entire gift passes to the members of the class who were in existence at the time that the class was determined."

This same paragraph from Page was quoted with approval by this court in *Will of Friend* (1951), 259 Wis. 501, 510, 49 N. W. (2d) 423, 33 A. L. R. (2d) 234. Since the instant will has been previously construed as permitting new-

born grandnieces and grandnephews to enter the class, the composition of the class has not yet been finally determined and will not be determined until the possibility of new arrivals in the class is extinguished, or until the youngest member of the class reaches age fifty, whichever event occurs first. Therefore, because membership in the class is still open, the above-quoted rule is fully operative.

Furthermore, this construction requiring survival is supported by the following statement from Simes and Smith, Law of Future Interests (2d ed.), p. 120, sec. 656:

". . . as a fact and not a rule of law, the existence of a class which may increase or decrease may well have a tendency, when coupled with other facts, to show that a testator intended to imply a condition precedent that the members of the class survive the period of distribution."

Thus far we have considered two rules of construction which favor the county court's determination that survivorship until the date of distribution is required. Appellant relies upon two rules of construction which favor the opposite result. The first of these is that where a gift of income accompanies a gift of corpus the law favors a construction that the gift of corpus is a vested interest. The second is that the law favors a construction which results in an absolutely vested interest rather than a defeasibly vested one.

In support of the first of these rules, appellant cites Restatement, 3 Property, p. 1297, sec. 258, which states:

"In a limitation which does not purport to create a prior interest but purports to create a springing executory interest in a person 'at twenty-one,' or 'when twenty-one,' or 'if he attains twenty-one,' or by other language similarly connoting the condition precedent of survival to a stipulated future date, the inclusion of a gift of the income produced by the thing up to such future date, *tends to establish* that such interest, after such income payments are to begin, is free from the condition precedent of survival." (Emphasis supplied.)

We deem the phrase "tends to establish" to be significant. This intimates that the rule may not be conclusive in all cases.

The reason for this rule is set forth in comment $a$ to this section of the Restatement, as follows (p. 1298):

"When an interest postponed as to possession or control is coupled with a gift of the economic benefits produced meanwhile by the thing, the conveyor thereby indicates an intent to have the postponement operate solely as a protection of the taker against his possible intermediate unwisdom, rather than as a condition precedent of his interest."

However, in the present case the postponement of possession and control was deliberately made to continue until the youngest of the grandnieces and grandnephews reached the age of fifty. At the time the will was made, the youngest was seven years old and the oldest was eighteen. The testatrix was not guarding against immaturity or unwisdom of these grandnieces and grandnephews. Rather, the inference is fairly strong that she desired a long-term trust extending over a great many years during which time her estate was to be kept intact. To attribute to her, because she directed annual disposition of the trust income, an intent that each grandniece and grandnephew should have a vested interest in the corpus by reason solely of the gift of income, is to apply a purely artificial rule to a situation in which it has no rational application.

Moreover, appellant has cited no Wisconsin cases holding that the gift of the income, during the period of the trust, to the same class that is designated to take the corpus at the close of the trust, creates any vested interest in any member of the class prior to the time that the composition of the class has become fixed. The only Wisconsin cases cited involve either a gift to a class whose composition is already completely fixed and closed (*Patton v. Ludington* (1899), 103 Wis. 629, 79 N. W. 1073; *Will of Prasser* (1909), 140

Wis. 92, 121 N. W. 643; *Will of Fouks* (1931), 206 Wis. 69, 238 N. W. 869); or a determination by the court as to what the vesting situation will be *after* the class becomes completely fixed and closed (*Benner v. Mauer* (1907), 133 Wis. 325, 113 N. W. 663).

We turn now to the second rule of construction relied upon by appellant, viz., the law favors an absolutely vested interest, rather than a defeasibly vested one. *Will of Colman* (1948), 253 Wis. 91, 100, 33 N. W. (2d) 237. The effect of the construction determined by the county court is to make the beneficial interest of the grandnephews and grandnieces in the corpus of the trust a defeasibly vested interest. This is because, although the beneficial interest in the corpus is vested in the class, death of a member of the class prior to the date of distribution causes a defeasance.

The preference for absolute vesting originated in connection with conveyances of interests in land, and at the time in feudal England when contingent interests in land had not attained a dignified stature. 5 American Law of Property, p. 130, sec. 21.3. It was based upon the desirability of a definitely ascertained placement of an interest as opposed to a suspension thereof pending some contingency. This rationale is still appropriate to support a preference for a vested, rather than a contingent, interest. However, because of the wide use of the trust device, this rationale does not lend any support to the preference for absolute rather than defeasible vesting. Therefore, it is doubtful if this rule should continue to have vitality when applied to beneficial interests in a trust where title is at all times vested in the trustee. This is in accord with the view expressed in the above-cited text that adherence to this preference in modern times "is at least of doubtful validity in many situations." Furthermore, this court has previously stated that the rule of construction in favor of an absolute vested interest is not to be resorted to where a contrary intent of a testator may

be gathered from the language employed in a will. *Will of Latimer, supra,* at page 172; *Will of Friend, supra,* at page 510.

In light of the rules of construction and the language of the instant will the problem of the proper construction is a difficult one. However, after a careful weighing of the various conflicting rules of construction, and considering the particular language used by testatrix in light of the long period of postponement of the date of distribution, we determine that it was testatrix's intent that survival of a member of the class to the date of distribution is a requisite condition to sharing in such distribution.

This conclusion is also applicable to the entitlement to distributions of trust income. The will provision that the interest was to be divided among "them" every year—"them" referring to the grandnephews and grandnieces—necessitates the construction that testatrix intended the gift of income also to be subject to defeasance by not surviving until the respective dates of distribution.

*By the Court.*—Judgment affirmed.

WILKIE, J., took no part.
FAIRCHILD, J., dissents.